UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DONALD REBSTOCK and <br> CHANEL REBSTOCK, individually and <br> on behalf of their minor child, DAULTON V. <br> REBSTOCK <br> <br> VERSUS <br> <br> TOMY INTERNATIONAL, INC., <br> LEARNING CURVE BRANDS, INC., <br> THE FIRST YEARS, INC., RC2 <br> CORPORATION, and WALMART STORES, INC | * <br> * <br> *  CIVIL ACTION NO.: 2:13-cv-04451 <br> * <br> * <br> * <br> * <br> *  SECTION: G (5) <br> * <br> * <br> * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS**

Plaintiffs, Donald Rebstock and Chanel Rebstock, individually and on behalf of their minor child, Daulton V. Rebstock, respectfully submit the following reply memorandum in response to the Opposition filed by Defendant, TOMY International, Inc. ("TOMY") and in further support of their Motion for Sanctions.

**I. INTRODUCTION**

In its 18-page Opposition, Defendant seeks to minimize the key facts at issue in this Motion and divert the Court's attention away from its blatant and ongoing discovery misconduct in this case. Specifically, Defendant argues in its opposition that: (1) the two recently-disclosed documents do not bear directly on important claims and defenses in this litigation; and (2) even if they did, all of the "substantive information" in the new documents was previously provided to Plaintiffs and is inconsequential. These arguments are inaccurate and misleading. First, the critical information contained in the withheld documents was *not* known by Plaintiffs prior to the disclosure ten days before trial. Critically, these documents demonstrate that (1) TOMY

1

corporate officials (two of whom are still employed by TOMY but who's identity had not previously been disclosed) had personal knowledge, prior to Daulton's accident, that children were falling out of the miSwivel chair because the back of the chair was detaching when being carried; and (2) the company deliberately chose not to report those incidents to the Consumer Product Safety Commission ("CPSC").  Second, the documents bear directly on important claims and defenses in this matter as they completely undermine the Defendant's defense that it was not reasonably foreseeable that caregivers were carrying the chair prior to Daulton Rebstock's injury, one of the only factors that is disputed from a liability standpoint.  The documents also demonstrate Defendant's failure to act in any manner to reduce the risk of harm, despite full knowledge that the product was causing serious injuries to children.[1]

Throughout its Opposition, Defendant also seeks to minimize its numerous discovery failures and put blame on Plaintiffs by arguing that (1) prior discovery disputes are irrelevant to this current motion; (2) timing issues associated with late discovery have plagued both parties; and (3) Plaintiffs' counsel had TOMY's organizational charts such that they could have "issued written discovery" or "requested [the] deposition" of TOMY's management personnel that were identified in the two previously withheld documents. Defendant misleadingly attempts to conflate discovery associated with both parties' difficulty in accurately diagnosing and forecasting future medical problems for a child with a severe brain injury with its own inexplicable and repeated failures to produce its own corporate documents.  While Plaintiffs produced Daulton's speech evaluation late in discovery because it did not exist prior to the initial expert report deadline, Defendant has no excuse for failing to provide documents that have been

---

[1] Moreover, as explained herein, Plaintiffs suggest that this previously withheld evidence of TOMY's deliberate decision not to report the prior incidents could support an entirely new claim for punitive damages in this lawsuit.

in TOMY's possession for years and that have been the subject of discovery requests since October 2013.

The Defendant's argument that Plaintiffs' counsel could or should have further inquired into the role of the personnel in the organizational charts turned over by the Defendant is an extremely disingenuous argument. In October 2013, Plaintiffs specifically requested in discovery the names of all "department heads" associated with the product. When Defendant finally responded five months later, instead of providing the names of Mr. Kilrea, the company's president and CEO who was personally involved in analyzing and determining not to report the safety issues with the product, and Rich Drapkin, the company's head of the Mothers, Infants and Toddlers (MIT) division who apparently oversaw the employees responsible for designing the product, Defendant directed Plaintiffs only to *former* employees and TOMY's organizational charts that contain over 500 entries. TOMY now apparently blames Plaintiffs for not figuring out who it should depose. Defendant also disingenuously attempts to blame Plaintiffs for not providing a corporate representative deposition notice until May 28, 2014. Of course, Defendant neglects to inform the Court that Plaintiffs' counsel had provided topics and sought dates for this deposition since early April. Finally, the Defendant blames a computer error for its failure to produce documents allegedly sent to counsel by TOMY in April 2014 and argues that this issue is not related to any other discovery issues. TOMY apparently forgets that it was unequivocally ordered (after an unopposed Motion to Compel filed by the Plaintiffs was granted) to produce all discovery in this case by February 24, 2014.[2] TOMY seeks to congratulate itself for providing discovery in this matter in March, April, May and July of 2014. It should not be lost on the Court that each such disclosure directly violated this Court's prior Orders and prejudiced the Plaintiffs' ability to develop its case.

---

[2] See Rec. Doc. 40.

Contrary to Defendant's Opposition, this Motion is not based on a "routine supplementation of an earlier production of documents." Defendant's recent and inexplicable failure to disclose highly relevant documents until ten days before trial is just one of Defendant's many discovery failures and evasion tactics that have prejudiced Plaintiffs in this case, hindered Plaintiffs' ability to prepare this case for trial, and led Plaintiffs to this request for sanctions. From obstinately delaying its initial production, to withholding the names of TOMY's only current employees with knowledge about the miSwivel chair, to designating a corporate representative who was incompetent with respect to issues in this litigation, Defendant has sought to delay and inhibit the progression of this case at every turn.  As explained more fully herein and in Plaintiffs' original motion, Defendant's conduct with respect to discovery in this matter is unacceptable and reprehensible, and the sanctions sought herein are more than warranted.

## II. ARGUMENT

### A. Defendant's failure to abide by the Federal Rules of Civil Procedure and this Court's Orders with respect to discovery has been an ongoing and consistent problem in this litigation.

To wit, it should be undisputed that the following events have occurred during discovery:

1. TOMY delayed responding to Plaintiffs' discovery requests for *five months*, and did not produce *any* documents in the case until approximately *three and a half months before trial*.

2. TOMY completely *ignored this Honorable Court's Order* requiring it to produce discoverable documents by February 24, 2014, and did not produce any documents until a month later, when faced with a motion for sanctions.

3. *TOMY did not produce a single email in discovery*, despite discovery requests specifically asking for all email correspondence regarding all key aspects of this case.[3]

---

[3] See Ex. 1 to Plaintiffs' Original Memorandum, Plaintiffs' Requests for Production of Documents, which includes requests for all documents (which, by definition, include email communication and other correspondence) regarding the design, manufacturing and assembly of the product, inspections of the product, complaints about the product, the

4. In response to Plaintiffs' request for the names of all persons "responsible for the design and engineering of the product," TOMY only provided the names of *former* employees, despite the fact that *current* employees in senior management oversaw the former employees.[4]

5. Plaintiffs requested the names of "all department heads responsible for the testing, designing, manufacturing, and safety engineering of the product." Instead of naming Mr. Kilrea and Mr. Drapkin, Defendant again only named *former* employees, and then directed Plaintiffs to a 23-pages compilation of various organizational charts of TOMY.[5]

6. Even after finally responding to discovery requests, for weeks TOMY ignored Plaintiffs' request for the depositions of the former employees, and then belatedly informed Plaintiffs that it allegedly could not locate or contact *any* of the four former employees whose depositions were requested.

7. TOMY designated as its corporate representative a current employee who was not employed until July 2013, *after* the miSwivel had been discontinued. The representative had no personal knowledge of *any* of the key aspects of this litigation and answered more than 60 questions in his deposition with "I don't know."

8. At the deposition of the corporate representative, which occurred *ten days before trial*, TOMY turned over documents that were directly responsive to Plaintiffs' initial discovery requests.

9. Prior to turning over these documents and during the deposition of the corporate representative, counsel for Plaintiffs was interrupted several times by defense counsel who sought detailed clarification as to the type of documents sought on this issue.[6] After a lengthy exchange between Mr. Huber and Mr. Lacy, the corporate representative answered as follows: "I can answer that question. No, there is no documentation that says that Rachael looked at this and felt that she did not have to report it to the CPSC."[7] Of course, counsel for Plaintiffs would later learn that the answer was inaccurate when, at a break in the deposition, he was, for the first time, provided with exactly such a document.

---

propensity of the product's backrest to become detached, and consideration of modifications and/or design alternatives.

[4] See Ex. 1, TOMY's Responses to Plaintiffs' Interrogatories, at Interrogatory No. 5.

[5] See *id*. at Interrogatory No. 19.

[6] See Ex. 2, Deposition of William McIntosh, at 52, line 14 – p. 55 line 25, wherein Mr. Lacy repeatedly attempts to clarify the type of documents sought by Mr. Huber's questions when, according to Mr. Lacy, he did not even know any such documents existed at the time. During the exchange, Mr. Huber actually specifically asks for meeting minutes evidencing that the company had met and determined that the incidents did not require reporting to the CPSC.

[7] *Id* at p. 55.

10. The previously undisclosed documents was the first evidence of two current TOMY employees, Mr. Kilrea and Mr. Drapkin, having personal knowledge of key aspects of the litigation.[8]

TOMY's repeated delays and failures with respect to discovery in this matter demonstrate a clear pattern of misconduct, all of which have greatly inhibited Plaintiffs from engaging in all necessary follow-up discovery and depositions. Extraordinarily, in its Opposition, Defendant suggests that it is Plaintiffs' fault that the deposition of TOMY's corporate representative did not occur until ten days before trial. Defendant neglects to mention that by the time Defendant finally answered Plaintiffs' first set of discovery requests, Plaintiffs had only three and a half months to complete discovery and prepare for the trial that was scheduled for July 7, 2014. Then, even after finally responding, Defendant continued its delay and evasion tactics with respect to setting depositions. For example, Plaintiffs sent Defendant a letter on April 11, 2014 requesting deposition dates for TOMY's corporate representative, as well as four former TOMY employees.[9] For weeks, Defendant did not respond,[10] and when it did, Defendant informed Plaintiffs' counsel that it had been unable to contact *any* of the four former employees identified in discovery. The former employees' last known contact information was not provided to Plaintiffs until May 29, 2014.[11]

Then, Defendant designated as its sole corporate representative a current employee who was not at TOMY at any time relevant to this litigation. Mr. McIntosh was designated despite the fact that TOMY's current President and CEO, Mr. Kilrea, and TOMY's current VP of the

---

[8] The Plaintiffs have previously requested that the Court order the Defendant to produce Mr. Kilrea for deposition immediately. Over the past weekend, the Plaintiffs realized that another individual, Mr. Drapkin, was also a relevant witness not previously disclosed. The Plaintiffs are also requesting his deposition at the Defendant's cost for the same reasons as Mr. Kilrea.

[9] See Ex. 3, April 11, 2014 letter from Mr. Marcelle to Mr. Lacy, which specifically requested depositions of TOMY corporate representatives (plural) and specifically requested, at a minimum, depositions of those "knowledgeable about prior claims or incidents involving this model chair."

[10] See Ex. 4, Follow-up letter dated April 29, 2014 from Mr. Marcelle to Mr. Lacy.

[11] See Defendant's Ex. 5 to its Opposition.

Mothers, Infants, and Toddlers division, Mr. Drapkin, both have personal knowledge of key aspects of this litigation (and topics that were specifically identified in the 30(b)(6) Notice of Deposition). This, of course, was unknown to Plaintiffs because Mr. Kilrea and Mr. Drapkin had never been identified as potential fact witnesses in discovery, and the documents that brought their names to light were not disclosed until the day of the corporate deposition. The identity of pertinent department heads, as well as internal communications regarding prior similar accidents, were specifically the types of information that Plaintiffs requested in their initial discovery requests, moved the Court to compel, and then moved the Court to sanction Defendant for its failure to supply. Thus, it is disingenuous for Defendant to suggest, as it does in its Opposition, that Defendant's prior discovery failures are unrelated and irrelevant to its failure to disclose the safety meeting minutes and the identity of Kilrea and Drapkin. Had the Court not continued the trial, Plaintiffs would not have had an opportunity to depose a single TOMY witness with pertinent knowledge about *any* issues in this litigation as a result of Defendant's delay and concealment tactics.

### B. The previously undisclosed documents uncovered not only two key witnesses, but also a potential new claim for punitive damages.

Contrary to Defendant's argument in its Opposition, the recently disclosed documents contain very significant new information, which is why Plaintiffs have requested an Order compelling Defendant to produce Mr. Kilrea for a deposition as quickly as possible. As we now know, TOMY had knowledge of at least three incidents that occurred prior to Daulton's accident that formed the basis of a March 19, 2012 meeting between Rachael Shaggott, TOMY's Director of Products Integrity and Greg Kilrea, TOMY's former Vice President and COO and current President and CEO. In each of the three incidents, a child fell head-first out of the miSwivel

chair because the back of the chair had detached when an adult was carrying the chair. More specifically, a March 23, 2011 consumer report to TOMY states the following:

> miSwivel feeding seat – She purchased it two weeks ago for her 4 month old grand-daughter. She was moving her grand-daughter from one end of the table to the other & the back fell off. Her grand-daughter was in the chair at the time. She was holding onto the very top of the back & then the front/bottom area. She was strapped in so when this occurred grandma was able to grab the harness straps preventing her head from hitting the floor but her back did make contact with the ground. She does have some red marks where the harness straps are but no bruising. The very top of the back is what fell off…[12]

A September 23, 2011 consumer report to TOMY states:

> Warning and complaint regarding the warnings on the miswivel feeding chair. Baby is not quite 6 months old. Child was on the floor mom picked up the chair with the baby strapped in the chair to move him to the next room. The back part of the chair came loose and he tipped upside down and fell on his head. Went to the ER…[13]

The third prior incident was reported to the Consumer Product Safety Commission by the consumer on February 25, 2012. The investigative report states:

> A four week old male was being carried by his mother in a [MiSwivel] feeding chair when the back separated and he fell three feet to the tile flooring below. He was not strapped in at the time of the incident. **He sustained skull fractures and was admitted to a local hospital for three days of observation and released**.[14]

The second document that was not disclosed until the corporate representative's deposition was meeting minutes from a second "safety meeting" between Ms. Shaggott and Mr. Drapkin held on October 19, 2012 regarding another accident in which a child was injured when the seatback detached as it was being carried. While Defendants had previously disclosed that the prior similar incidents had been reported to TOMY, Mr. McIntosh's deposition was the first time Plaintiffs learned that TOMY corporate officers were *personally aware* that the chair was

---

[12] Ex. 5, (Trial Exhibit 72).
[13] Ex. 6, (Trial Exhibit 71).
[14] Ex. 7, (Trial Exhibit 64).

dangerous and intentionally made the decision not to report this matter to the United States Consumer Product Safety Commission ("CPSC").

The CPSC is a federal entity that legally obligates manufacturers to immediately report (1) a defective product that could create a substantial risk of injury to consumers and (2) a product that creates an unreasonable risk of serious injury or death.[15] Despite recognizing that in at least three instances prior to Daulton's accident, babies fell out of the chair because the seatback had unlatched, and in at least one instance resulting in a grave injury, TOMY's officials determined that it had no duty to take *any* corrective action such as reporting the incidents to the CPSC, altering the product's warning, or recalling the product.

Plaintiffs believe that this previously undisclosed evidence of intentional conduct may be grounds for amending their claims in this litigation to add a claim for punitive damages.  Under Illinois law, punitive damages may be awarded in products liability actions where a plaintiff proves that a manufacturer "intentionally withheld from or misrepresented to Congress, the State legislature, or the relevant federal or State agency material information relative to the safety or use of the product that would or could have resulted in a changed decision relative to the law, standard or other administrative action." 735 ILCS 5/2-2107.  Louisiana Civil Code article 3546 allows for an award of punitive damages when such damages are authorized by the law of the state where the injurious conduct occurred and the person whose conduct caused the injury was domiciled.[16]  Plaintiffs intend to explore this issue at the deposition of Mr. Kilrea and reserve their right to amend their pleadings based upon the previously undisclosed documents and what is learned from the deposition of Mr. Kilrea.

---

[15] See Ex. 8, print-out of http://www.cpsc.gov/en/Business--Manufacturing/Recall-Guidance/Duty-to-Report-to-the-CPSC-Your-Rights-and-Responsibilities/.

[16] Upon information and belief, at all relevant time periods, Mr. Kilrea was located and TOMY was domiciled in Oak Brook, Illinois.

### C. Sanctions are warranted in the form of costs and attorneys' fees, an adverse presumption, and the striking of defenses.

Where the nature of the breach of a discovery violation is the non-production of evidence, a District Court has broad discretion in fashioning an appropriate sanction. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486, 488 (5th Cir. 2012). It is clear that in this case, Defendants have engaged in delay and evasion tactics throughout the entire course of discovery, including by (1) failing to provide key documents, (2) withholding the identity of key fact witnesses, and (3) failing to designate and prepare a corporate representative to testify to all matters "known and reasonably available to the organization" as required by Federal Rule 30(b)(6). "[F]ailure to produce evidence, without just cause, which is relevant within the context of Rule 26, Federal Rules of Civil Procedure, bears a close relationship to the 'spoliation of evidence,' and should be sanctioned accordingly."[17]

At a minimum, Plaintiffs request that Defendant's be taxed with the attorneys' fees and costs associated with the additional discovery that Defendant's discovery misconduct has necessitated in accordance with Federal Rule 37(c)(1)(A) – namely, the costs and fees associated with taking Mr. Kilrea's deposition and the deposition of Mr. Drapkin. Plaintiffs believe, however, that additional sanctions are warranted in this case due to Defendant's repeated and willful failures to be diligent and forthright during the entire discovery process. For instance, despite discovery requests, a Rule 37 conference, an unopposed motion to compel (which was granted), and a motion for sanctions, *Defendant still has not produced a single email in discovery of this matter.* Plaintiffs find it difficult to believe that TOMY's employees never sent or received a single internal email regarding the design and production of the product, complaints about the product, meetings about consumer complaints, etc. Thus, on July 3, 2014,

---

[17] *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000).

10

after the corporate deposition in which TOMY provided previously undisclosed documents, Plaintiffs sent a letter to Defendant's counsel requesting that TOMY verify that all discovery had been truthfully and completely answered.[18] To date, TOMY has not provided such verification or provided any explanation as to why it has not produced a single email in this litigation. Thus, Plaintiffs herein re-urge their original Motion to Compel the production of all documents requested in discovery. Moreover, an adverse inference and jury instruction that the unproduced internal emails among TOMY employees would have been unfavorable to Defendant is warranted under Rule 37(c)(1)(B). *See, e.g., <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>*, 306 F.3d 99, 101 (2d Cir. 2002) (fact that party was "purposely sluggish" in producing discovery materials could support inference that materials not produced in time for trial were harmful to opposing party, warranting adverse inference instruction).

Plaintiffs also believe that striking defenses is warranted in this case, pursuance to Rule 37(b)(2). Defendant should not be allowed to argue, for instance, that picking up and carrying the chair was not a reasonably anticipated and/or foreseeable use of the product when previously undisclosed documents demonstrate TOMY's officials' knowledge, prior to Daulton' accident, that consumers were picking up and carrying the chair.

## III.  CONCLUSION

For the reasons stated in Plaintiffs' original memorandum and herein, Plaintiffs respectfully move this Honorable Court for sanctions for Defendant's multiple discovery failures in the form of attorneys' fees and reasonable costs incurred in any additional discovery, an adverse inference, and striking of Defendant's defenses.

---

[18] See Ex. 9, July 3, 2014 letter from Mr. Huber to Mr. Lacy and Mr. Buck.

Respectfully submitted,

**HUBER, SLACK, HOUGHTALING, PANDIT & THOMAS, LLP**

*/s/Brian P. Marcelle*
STEPHEN M. HUBER, BAR NO. 24463
BRIAN P. MARCELLE, BAR NO. 25156
1100 Poydras Street, Suite 1405
New Orleans, LA 70163
Telephone:(504) 274-2500
Facsimile: (504) 910-0838
ATTORNEYS FOR PLAINTIFF

**LAW OFFICES OF EDWARD J. WOMAC, JR. & ASSOCIATES**

*s/Jason Giles*
**EDWARD J. WOMAC, JR. #02195**
**JASON GILES, Bar No. 29211**
3501 Canal Street
New Orleans, LA 70119
Telephone: (504) 486-9999
Facsimile: (504) 488-4178
jgiles@edwardwomac.com
**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*s/Brian P. Marcelle*
BRIAN P. MARCELLE